Neil Pedersen, SBN 139262
*npedersen@pedersenlaw.com*
Jennifer J. Santillan, SBN 333113
*jton@pedersenlaw.com*
**PEDERSEN LAW**
**A PROFESSIONAL LAW CORPORATION**
5455 Garden Grove Blvd., Suite 450
Westminster, California 92683
Phone: (949) 260-1181
Fax:    (949) 260-1184

Attorneys for Plaintiff, SANTIAGO GRANADOS II

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| SANTIAGO GRANADOS II, as an individual,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED PARCEL SERVICE, INC., an Ohio Corporation; and DOES 1-50, inclusive,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR:**<br><br>1. **FRAUD – INTENTIONAL MISREPRESENTATION**<br>2. **FRAUD – FALSE PROMISES**<br>3. **WRONGFUL ADVERSE EMPLOYMENT ACTION IN VIOLATION OF PUBLIC POLICY**<br><br>**[JURY TRIAL DEMANDED]** |

COMPLAINT - 1

Plaintiff, SANTIAGO GRANADOS II makes the following allegations against Defendant, UNITED PARCEL SERVICE, INC., an Ohio Corporation:

## GENERAL ALLEGATIONS
### Subject Matter and Personal Jurisdiction

1. Plaintiff, SANTIAGO GRANADOS II ("Mr. Granados") is, and at all relevant times was, a citizen of the City of San Bernardino in the County of San Bernardino, State of California.

2. Mr. Granados is informed and believes, and thereon alleges, that at all relevant times, Defendant UNITED PARCEL SERVICE, INC. ("Defendant") was a corporation incorporated under the laws of the State of Ohio, with a principal place of business located in Atlanta, Georgia at 55 Glenlake Parkway NE, Atlanta, Georgia 30328. Mr. Granados is informed and believes, and thereon alleges, that at all relevant times, Defendant was qualified to do, and is doing business in the State of California at various locations, including in Ontario, California where Mr. Granados was employed.

3. This Court has original jurisdiction of this matter pursuant to 28 U.S.C. § 1332, in that the present matter is a civil action between citizens of different states in which the amount in controversy exceeds, exclusive of interest and costs, the sum of seventy-five thousand dollars ($75,000).

4. This Court has personal jurisdiction over Defendant because Defendant is an entity that has sufficient minimum contacts in California by purposely availing itself to the benefits and protections of California, so as to render this Court's exercise of jurisdiction over Defendant consistent with traditional notions of fair play and substantial justice.

5. Specifically, Mr. Granados was employed by Defendant in the County

of San Bernardino, State of California, from approximately August 18, 2018 until November 21, 2020. Mr. Granados is informed and believes, and thereon alleges that the unlawful conduct at issue in this matter occurred at Defendant's Ontario Hub, located at 3140 E Jurupa Street, Ontario, CA 91761, which is where Mr. Granados was employed.

## Venue

6.  Venue is proper in the above-mentioned district pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to Mr. Granados's claims occurred in the City of Ontario, County of San Bernardino, State of California. Specifically, Defendant employed Mr. Granados to work at its Ontario Hub located in the instant judicial district, and the wrongful conduct alleged herein by Mr. Granados occurred in the instant judicial district.

## Doe Allegations

7.  The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendant DOES 1-50, inclusive, are unknown to Mr. Granados, who therefore sues said Defendants by such fictitious names. Mr. Granados is informed and believes, and thereon alleges that each of these fictitiously named Defendants is legally responsible in some manner for the wrongful acts and occurrences set forth herein below, as well as for the resulting injury and damages to Mr. Granados. DOES 1-50, inclusive, are either business entities or individuals who performed the wrongful acts and/or omissions set forth herein, and/or were employers of Mr. Granados and/or were co-conspirators, joint venturers, partners, pooling participants, or are otherwise jointly liable with the named Defendants. Mr. Granados will amend this Complaint by setting forth the true names and capacities of said DOE individuals or entities when such information has been ascertained. From this point forward in this Complaint, Defendant United Parcel

1  Service, Inc. and DOES 1-50 will collectively be referred to as "Defendants."

## Vicarious Liability

8.  Unless otherwise indicated, each Defendant herein sued is the agent, co-conspirator, joint venturer, partner, and/or employee of every other Defendant and, as alleged, has been acting within the course and scope of said agency, conspiracy, joint venture, partnership, and/or employment, with the knowledge and/or consent of co-defendants, and each of them.  Mr. Granados is informed and believes and thereon alleges that each Defendant has authorized and/or ratified the wrongful activities of each of the remaining Defendants.

9.  The corporate Defendants' conduct was undertaken by its officers, managing agents and other persons responsible for supervision of employees and for the drafting and implementation of policies and other managerial decisions.  The conduct of the officers, managing agents, and other individuals was on behalf of the corporate Defendants.  Further, the corporate Defendants had advance knowledge of such conduct of said individuals whose actions and conduct were ratified, authorized, approved and/or known by the corporate Defendants' officers and managing agents.

## COMMON ALLEGATIONS TO ALL CAUSES OF ACTION

10. On or around August 18, 2018, Mr. Granados was employed by Defendants as a Diesel Journeyman Technician in the automotive section of Defendant's Ontario, California UPS Hub located at 3140 E Jurupa Street, Ontario, CA 91761 ("Ontario Hub"). As a Diesel Journeyman Technician, Mr. Granados was responsible for providing maintenance and repairs to UPS delivery vehicles each Sunday through Thursday from 5:00 p.m. to 3:30 a.m.

11. On or about March of 2020, as the Coronavirus pandemic ("COVID-19") rapidly spread across the United States, employees reporting to

Defendants' Ontario Hub were required to submit to a temperature check with security at the front gate of the facility prior to being permitted to enter the premises and begin their respective work shifts.

12. Although Mr. Granados arrived on time to his shifts at the Ontario Hub, often times, due to the required temperature checks at the front gate slowing down employees' entrances into the Hub, Mr. Granados was not able to clock-in until approximately fifteen minutes after his scheduled start time. Mr. Granados informed his supervisors that he was in fact reporting to work on time but was not able to clock-in at the start of his shifts due to the delay caused at the front gate.

13. As a result of complaints by Mr. Granados and other employees, on or about June or July of 2020, Mr. Granados's supervisor, Mr. Felipe Zamora, directed all technicians to report their clock-in times as the time in which they arrived and checked in with security at the front gate, rather than the time after they underwent security screening and arrived at their respective work locations within the Hub. Following his supervisor's instruction, Mr. Granados thereafter began reporting his clock-in time as the time in which he arrived at the security gate.

14. On or around November of 2020, a member of UPS's loss prevention team visited the Ontario Hub and requested to speak with Mr. Granados. In the meeting between Mr. Granados and loss prevention, Mr. Granados was asked how he was clocking in for his shifts. Mr. Granados informed the loss prevention associate that he clocked in at the time he arrived at the security gate. When the loss prevention associate asked Mr. Granados who instructed him to report his clock-in time as the time in which he arrived at the security gate, Mr. Granados informed the associate that Mr. Zamora, his supervisor, instructed him to do so. The loss prevention associate thereafter questioned Mr. Zamora on this practice, to which Mr. Zamora

admitted that he did instruct the technicians working under him to clock-in in this manner.

15. Despite Mr. Zamora's admission, loss prevention informed Mr. Granados that he only had two options: 1) to resign immediately and be eligible for re-hire at a later time, or 2) to have loss prevention close its case and recommend Mr. Granados's termination, making Mr. Granados ineligible for re-hire with UPS.

16. Since Mr. Granados enjoyed working for UPS and wished to continue his employment relationship with UPS, Mr. Granados relied on the loss prevention associate's assurances that resigning from his position was the only way for him to be eligible for re-hire at UPS. In trusting and relying upon the loss prevention associate's representations, Mr. Granados hesitantly resigned from his position with UPS on November 31, 2020.

17. Approximately one month later, UPS posted a job opening for a "Building Maintenance" position, to which Mr. Granados applied. Wanting to follow up regarding his application, Mr. Granados called UPS's Human Resources Department ("HR") and was informed that he was flagged by upper management as not being eligible for re-hire with UPS. HR also told Mr. Granados that they could not disclose the reason as to why he was flagged as not being eligible for re-hire. Mr. Granados loved working for UPS and was devastated to learn that while he resigned due to the prospect of later being eligible for re-hire, such was not the case.

18. It was only when Mr. Granados learned that he was flagged as ineligible for rehire that he had been lied to, i.e., a victim of fraud, by the loss prevention associate to compel him to sign a resignation that he otherwise would not have signed.  In acting as he did, Mr. Granados reasonably relied upon the

representation of the loss prevention associate that he would be eligible for rehire if he resigned at that time.

19. As a result of the actions by Defendants, Mr. Granados has suffered and continues to suffer damages in the form of lost wages and employment benefits. Mr. Granados struggles to meet everyday expenses. As a result of the financial losses and the loss of his employment, Mr. Granados has suffered and continues to suffer emotional distress, including but not limited to, stress-related physical ailments, depression, anxiety, loss in motivation, insomnia, lack of energy, and lack of interest in activities that he would normally find pleasurable.

## FIRST CAUSE OF ACTION

### Fraud – Intentional Misrepresentation – Against all Defendants

20. Plaintiff hereby incorporates all of the allegations set forth in each of the paragraphs above and below by reference as though set forth in full in this cause of action.

21. As set forth in more detail above, the UPS loss prevention associate lied to Mr. Granados about the fact the company would consider him eligible for rehire if he signed resignation paperwork. That representation was false at the time it was made. Mr. Granados is informed and believes and on that basis alleges that the loss prevention associate either knew his statement to be false, or he made that statement recklessly and without regard for the truth.

22. Mr. Granados is informed and believes and on that basis alleges that the Defendants' loss control associate intended that Mr. Granados rely on the representation made. Mr. Granados reasonably relied on the representation made by the loss control associate.

23. As a result of Mr. Granados' reliance on the false statement made by the

1 Defendants' loss control associate, he has been injured, financially and
2 emotionally. By not considering Mr. Granados for rehire and preventing him
3 from ever holding a job at Defendants' business establishment, Mr. Granados
4 will suffer financial damages for many years into the future, and emotional
5 distress associated with the humiliation and embarrassment of being taken in
6 by the lying loss prevention associate, as well as the emotional distress caused
7 by loss of a job, difficulty trusting employers in the future, along with anger,
8 frustration, bewilderment, anxiety, and related kinds of emotional distress.

24. Mr. Granados' reliance on the Defendants' loss prevention associate's false statement was a substantial factor in causing Mr. Granados the aforementioned harm.  By relying on the statement, Mr. Granados believed that if he materially changed his position by signing the resignation, he would be eligible for rehire with the company in the future.  He would not have signed that resignation had he not been told that doing so would not alter his future attempts to apply for jobs at the company.

25. Mr. Granados is informed and believes that he was qualified for many open jobs that have arisen since his resignation, and that he would have been able to get one of those jobs had he not been flagged as a "no rehire."

26. Defendants' wrongful conduct was intended to cause injury to Mr. Granados and/or was despicable and fraudulent conduct carried out with a willful and conscious disregard of Mr. Granados rights.  Defendants' company practices subjected Mr. Granados to cruel and unjust hardship, was done with reckless disregard, all with the intent to deprive Mr. Granados of his property, legal rights, or to otherwise cause injury, such as to constitute malice, oppression and/or fraud under California Civil Code section 3294.  Mr. Granados is therefore entitled to recover punitive damages in an amount

sufficient to punish or to set an example of Defendants to prevent such conduct by others.

## SECOND CAUSE OF ACTION

### Fraud – False Promises – Against all Defendants

**27.** Plaintiff hereby incorporates all of the allegations set forth in each of the paragraphs above and below by reference as though set forth in full in this cause of action.

**28.** As set forth in more detail above, the UPS loss prevention associate made a promise to Mr. Granados that the company would consider him eligible for rehire if he signed the resignation paperwork presented to him.  That promise was false at the time it was made.  Mr. Granados is informed and believes and on that basis alleges that the loss prevention associate did not intend to perform the promise, and knew Defendants would not follow through on the promise when the loss prevention associate made the promise.

**29.** Mr. Granados is informed and believes and on that basis alleges that the Defendants' loss prevention associate intended that Mr. Granados rely on the promise made.  Mr. Granados reasonably relied on the promise made by the loss prevention associate.

**30.** Defendants did not perform the promised act. Rather, just the opposite occurred – Mr. Granados was placed in a "no rehire" status.

**31.** As a result of Mr. Granados' reliance on the false promise made by the Defendants' loss prevention associate, Mr. Granados has been injured, financially and emotionally.  By not considering Mr. Granados for rehire and preventing him from ever holding a job at Defendants business establishment, Mr. Granados will suffer financial damages for many years into the future, and emotional distress

1 associated with the humiliation and embarrassment of being taken in by the lying loss prevention associate, as well as the emotional distress caused by loss of a job, difficulty trusting employers in the future, along with anger, frustration, bewilderment, anxiety, and related kinds of emotional distress.

32. Mr. Granados' reliance on the Defendants' loss prevention associate's false promise was a substantial factor in causing Mr. Granados the aforementioned harm.  By relying on the promise, Mr. Granados believed that if he materially changed his position by signing the resignation, he would be eligible for rehire with the company in the future.  He would not have signed that resignation had he not been promised that doing so would not alter his future attempts to apply for jobs at the company.

33. Mr. Granados is informed and believes that he was qualified for many open jobs that have arisen since his resignation, and that he would have been able to get one of those jobs had he not been flagged as a "no rehire."

34. Defendant's wrongful conduct was intended to cause injury to Mr. Granados and/or was despicable and fraudulent conduct carried out with a willful and conscious disregard of Mr. Granados' rights.  Defendants' company practices subjected Mr. Granados to cruel and unjust hardship, was done with reckless disregard, all with the intent to deprive Mr. Granados of his property, legal rights, or to otherwise cause injury, such as to constitute malice, oppression and/or fraud under California Civil Code section 3294.  Mr. Granados is therefore entitled to recover punitive damages in an amount sufficient to punish or to set an example of Defendants to prevent such conduct by others.

//

# THIRD CAUSE OF ACTION

## Wrongful Adverse Employment Action in Violation of Public Policy – Against all Defendants

**35.** Plaintiff hereby incorporates all of the allegations set forth in each of the paragraphs above and below by reference as though set forth in full in this cause of action.

**36.** In California, an employer's authority to terminate an at-will employee is limited by statute and by considerations of public policy. (*Tameny v. Atlantic Richfield* (1980) 27 Cal.3d 167, 172.) While an at-will employee may be terminated, there can be no right to terminate for an unlawful reason or for a purpose that contravenes fundamental public policy. This theory extends to any adverse employment action taken in violation of fundamental public policy.

**37.** Mr. Granados was employed by Defendants.

**38.** Mr. Granados was victimized by adverse employment actions, namely he was forced to resign from his job as a result of several false and misleading actions by Defendants, and he was not considered for rehire when he sought employment with Defendants.

**39.** Mr. Granados is informed and believes and on that basis alleges that he was forced to resign and then never considered to be rehired when he tried to become employed again as an act of retaliation against Mr. Granados, for standing up for his rights to be compensated for all time he spent at the workplace. Namely, Mr. Granados was told his termination that was threatened if he did not sign resignation paperwork was due to alleged time card fraud. However, that time card fraud was nothing more than Mr. Granados following his supervisor's instructions to start his time for the day when he arrived at the Covid temperature checkpoint, not when he got to his specific job location. This policy was

announced by Mr. Granados' boss after Mr. Granados had complained about not being paid to wait through the pre-screening process. When he was told he was going to be fired, the stated reason was that he was falsely stating his work start time as then he arrived at the screening checkpoint, not when he arrived at his designated location.

**40.** Substantial litigation has occurred over the issue of paying employees for the time spent at screening checkpoints. In fact, Mr. Granados is informed and believes and therefore alleges that Defendants were engaged in a class action about that very issue. There is no question that the issue was well known to Defendants. The public policy of being sure all non-exempt employees be paid for time spent at screening checkpoints, although not longstanding, was litigated and made public with sufficient public attention to qualify that public policy as a fundamental public policy that Defendants and other employers were made aware of.

**41.** Mr. Granados was essentially terminated from his employment by Defendants. He was told that his option was to either be fired, or to resign to avoid termination. Either way, Defendants made clear that Mr. Granados' employment with Defendants was ending immediately.

**42.** Effectively terminating Mr. Granados because he was engaging in lawful conduct, because he complained about not being paid for going through a mandatory screening process, and because his termination was based on an unlawful standard of clocking in after going through the screening process all violates the public policy discussed above.

**43.** As a result of Mr. Granados being subjected to the aforementioned adverse employment actions, Mr. Granados has been injured, financially and emotionally. By not considering Mr. Granados for rehire and preventing him

from ever holding a job at Defendants' business establishment, Mr. Granados will suffer financial damages for many years into the future, and emotional distress associated with the humiliation and embarrassment of being taken in by the lying loss prevention associate, as well as the emotional distress caused by loss of a job, difficulty trusting employers in the future, along with anger, frustration, bewilderment, anxiety, and related kinds of emotional distress.

**44.** Defendant's wrongful conduct was intended to cause injury to Mr. Granados and/or was despicable and fraudulent conduct carried out with a willful and conscious disregard of Mr. Granados rights.  Defendants' company practices subjected Mr. Granados to cruel and unjust hardship, was done with reckless disregard, all with the intent to deprive Mr. Granados of his property, legal rights, or to otherwise cause injury, such as to constitute malice, oppression and/or fraud under California Civil Code section 3294.  Mr. Granados is therefore entitled to recover punitive damages in an amount sufficient to punish or to set an example of Defendants to prevent such conduct by others.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

### **As to all Causes of Action:**

1. For general and special damages arising out of the fraud and wrongful adverse employment actions in violation of public policy, which amount necessarily includes lost wages, lost benefits, emotional distress, and other such damages in an amount exceeding the sum of seventy-five thousand dollars ($75,000), exclusive of interest and costs, such amount to be subject to proof at the time of trial;

2. For punitive damages in an amount sufficient to punish or make an example of Defendants for their unlawful conduct and/or to deter further malicious, fraudulent and oppressive conduct;

3. For prejudgment interest on these amounts at the legal rate;

4. For costs of suit herein, and;

5. For such other relief as the Court deems just and proper.

Dated: October 14, 2022

**PEDERSEN LAW,**
**A PROFESSIONAL LAW CORPORATION**

By: _____
  Neil Pedersen
  Jennifer J. Santillan
  Attorneys for Plaintiff, *Santiago Granados II*

# DEMAND FOR JURY TRIAL

Plaintiff Santiago Granados II hereby demands a jury trial in the above-captioned matter.

Dated: October 14, 2022

**PEDERSEN LAW,**
**A PROFESSIONAL LAW CORPORATION**

By: _____
   Neil Pedersen
   Jennifer J. Santillan
   Attorneys for Plaintiff, *Santiago Granados II*